FRED A. RISSER, Chairman, Senate Organization Committee
I have your July 9 letter requesting an opinion on the Madison Redevelopment Authority's statutory powers. Your question reads:
 Assuming that the Madison Redevelopment Authority, in cooperation with the City of Madison, designates a redevelopment or urban renewal area, and assuming that throughout the process of condemning and acquiring the included parcels and improvements all statutory requirements applicable to this project are met, and assuming that within the project area there is a small percentage of the total number of parcels and improvements that are clearly not in and of themselves blighted or deteriorated; does the Madison Redevelopment Authority have the statutory power to condemn and acquire these properties as part of the renewal project? *Page 117 
The Madison Redevelopment Authority is created and functions under the provisions of sec. 66.431, Stats. Under sec. 66.431 (5) (a) 3., Stats., a redevelopment authority has the power "within the boundaries of the city to acquire by purchase, lease, eminent domain, or otherwise, any real or personal property or any interest therein, together with any improvements thereon,necessary or incidental to a redevelopment or urban renewalproject. . . ." (Emphasis added.)
Assuming that the Redevelopment Authority properly proceeds under sec. 66.431, Stats., to satisfy all statutory and other legal requirements necessary to establish a project area and implement a redevelopment plan therefore, it is my opinion that the Redevelopment Authority may proceed to condemn any property within the project area even though some portions of the urban renewal area is not in fact blighted.
The leading case on the subject is Berman v. Parker (1954),348 U.S. 26, 99 L.Ed. 27. In that case the U.S. Supreme Court clearly stated:
 ". . . Property may of course be taken for this redevelopment which, standing by itself, is innocuous and unoffending. But we have said enough to indicate that it is the need of the area as a whole which Congress and its agencies are evaluating. If owner after owner were permitted to resist these redevelopment programs on the ground that his particular property was not being used against the public interest, integrated plans for redevelopment would suffer greatly. The argument pressed on us is, indeed, a plea to substitute the landowner's standard of the public need for the standard prescribed by Congress. But as we have already stated, community redevelopment programs need not, by force of the Constitution, be on a piecemeal basis — lot by lot, building by building.
 "It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch. . . ." 348 U.S., pp. 35-36. *Page 118 
The last sentence above was quoted with approval by the Wisconsin Supreme Court in Kamrowski v. State (1966), 31 Wis.2d 256,266-267, 142 N.W.2d 793, 798, and other courts, including ours, have reached conclusions similar to that in Berman. See 45 A.L.R. 3d 1096, 1110, sec. 4; 40 Am. Jur. 2d 1073, sec. 18; DavidJeffrey Co. v. Milwaukee (1954), 267 Wis. 559, 585,66 N.W.2d 362; State ex rel. Milwaukee v. Circuit Court (1958),3 Wis.2d 439, 449, 88 N.W.2d 339.
Thus, in David Jeffrey Co. v. Milwaukee, supra, in sustaining the Blighted Area Law, sec. 66.43, Stats., a blight elimination law similar to sec. 66.431, Stats., granting to cities the power to acquire by eminent domain any real property "necessary or incidental to a redevelopment project," our court upheld the authority of cities to condemn bare or vacant land for such purposes, concurring with the view expressed by the trial court, that:
 "`Here again it is to be noted that the law is directed against slum and blighted areas, not individual structures. It must be presumed that the legislature believed that the evils resulting from blight are inherent not in the particular structures but in the entire blighted area as a whole. . . . The necessity for acquiring vacant parcels and unoffending buildings within a blighted area to effectuate a sound workable plan of redevelopment is obvious.
 "`. . . It is apparent, however, that to single out and except from the provisions of the law vacant land and unoffending structures would render the whole program of blighted-area redevelopment futile and ineffective. . . .'" 267 Wis., p. 585.
And in State ex rel. Milwaukee v. Circuit Court, supra, at p. 449, the court stated:
 ". . . The Blighted Area Law places wide discretion in the city council as to what properties should be included in this redevelopment project. See sec. 66.43 (3) (j) 1 and 2, Stats. Not only are properties to be included which are `necessary' for either the proper clearance, or the redevelopment, of the area but also those which are `incidental' to either of such purposes. Sec. 66.43 (3) (j) 2. *Page 119 
 "If it be essential that certain presently nonoffending structures, or vacant parcels, be included in the area to be acquired and redeveloped as a condition precedent to obtaining federal financing of the project, the taking of them would at least be `incidental' to the taking and redevelopment of those offending properties already constituting a slum area. . . ."
It is my opinion that our court would follow the rationale of the foregoing decisions in concluding that the existence of unblighted properties within a redevelopment or urban renewal area is not, in and of itself, fatal to the exercise of authority under sec. 66.431, Stats.
BCL:JCM