WISCONSIN BUILDERS ASSOCIATION,
Wisconsin Merchants Federation,
Wisconsin Manufacturers and Commerce,
Wisconsin Realtors Association, Lake States
Lumber Association of Wisconsin & Michigan,
National Federation of Independent Business
Wisconsin Chapter, Outdoor Advertising
Association of Wisconsin, Timber Producers
Association of Wisconsin & Michigan, Wisconsin
Fireworks Association and Wisconsin Grocers
Association and Wisconsin Farm Bureau
Federation Cooperative,
Plaintiffs-Respondents,

v.

WISCONSIN DEPARTMENT OF
TRANSPORTATION and Frank J. Busalacchi,
Defendants-Appellants.

Court of Appeals

No. 2004AP2388. *Submitted on briefs April 20, 2005.*
*—Decided June 16, 2005.*

2005 WI App 160

(Also reported in 702 N.W.2d 433.)

474

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Peggy A. Lautenschlager*, attorney general, and *Thomas C. Bellavia, assistant attorney general.*

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *John A. Kassner* and *Jennifer M. Krueger, Murphy Desmond S.C.*, Madison.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. The Wisconsin Builders Association and others[1] challenge the validity of certain provisions of Wis. Admin. Code ch. Trans 233, as amended in 1999 and 2001, on the ground that they are

---

[1] There are eleven plaintiffs in this action, all entities with interests in building or land development. For simplicity's sake, we will use "Wisconsin Builders" to include all plaintiffs.

not statutorily authorized and effect an unconstitutional taking of property without just compensation. The challenged rules concern land divisions abutting public highways. The circuit court agreed with Wisconsin Builders, and the Wisconsin Department of Transportation (DOT) appeals.

¶ 2. We conclude Wis. Stat. ch. 236 does not authorize DOT to regulate land divisions that are not subdivisions within the meaning of Wis. Stat. § 236.02(12)[2] and no other statute relied on by DOT grants this authority. Accordingly, the challenged rules are invalid to the extent they apply to land divisions that are not subdivisions. We also conclude the enactment of the setback restrictions do not constitute a Fifth Amendment taking under the theories advanced by Wisconsin Builders. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

¶ 3. Prior to 1999, Wis. Admin. Code ch. Trans 233, Division of Land Abutting a State Trunk Highway or Connecting Highway, established the procedures that were to be applied when DOT reviewed subdivision plats pursuant to Wis. Stat. ch. 236.[3] In 1999, DOT revised the rules to provide that DOT is to review all land divisions abutting the highway that are accomplished by any method—not only subdivision plats, but also condominium plats, certified survey maps, and

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] These rules were first promulgated in 1956 as Wis. Admin. Code ch. Hy 33. In 1996, the chapter was renumbered Wis. Admin. Code ch. Trans 233, but no substantive changes were made at that time.

other land divisions. WIS. ADMIN. CODE § TRANS 233.03(3)-(4). Thus the substantive requirements regarding highway access, drainage, noise, visibility, and setback restrictions became applicable to all land divisions, not just subdivision plats under ch. 236. WIS. ADMIN. CODE §§ TRANS 233.05, 233.105, 233.08.

¶ 4. In general, the setback is the area within 110 feet of the centerline of a state trunk highway or connecting highway or within fifty feet of the nearer right-of-way line, whichever is furthest from the centerline. WIS. ADMIN. CODE § TRANS 233.08(2)(a). Structures and improvements within this area are generally prohibited.[4] *Id.*, subsec. 1. The original version of the rule provided for special exceptions to its terms where application would result in "practical difficulty or unnecessary hardship . . . and not contrary to the public interest." WIS. ADMIN. CODE § HY 33.11 (September, 1956,

---

[4] WISCONSIN ADMIN. CODE § TRANS 233.015(7) provides:

(7) "Structure" includes a temporary or non-permanent addition to or betterment of real property that is portable in nature, but that adversely affects the safety of entrance upon or departure from state trunk or connecting highways or the preservation of public interest and investment in those highways, as determined by the department. "Structure" does not include portable swing sets, movable law sheds without pads or footings, and above ground swimming pools without decks.

WISCONSIN ADMIN. CODE § TRANS 233.015(2) provides:

(2) "Improvement" means any permanent addition to or betterment of real property that involves the expenditure of labor or money to make the property more useful or valuable. "Improvement" includes parking lots, driveways, loading docks, in-ground swimming pools, wells, septic systems, retaining walls, signs, buildings, building appendages such as porches, and drainage facilities. "Improvement" does not include sidewalks, terraces, patios, landscaping and open fences.

No. 9).[5] The 1999 amendments to ch. 233 added a provision prohibiting DOT from granting special exceptions for "the erection or installation of any structure or improvement" within a setback area unless the owner executed an agreement providing that, if DOT needed to acquire land within the setback area, DOT "is not required to pay compensation, relocation cost or damages relating to any structure or improvement authorized by the [special exception]." Wis. Admin. Code § Trans 233.11(2) (Register, January 1999, No. 517).[6]

¶ 5. In 2001, DOT revised the setback restrictions to make a reduced setback of fifteen feet from the nearest right of way applicable to a subset of less important and congested highways. Wis. Admin. Code § Trans 233.08(3n). The condition for a special exception—an agreement that DOT need not pay compensation for structures and improvements within the setback—remained. Wis. Admin. Code § Trans 233.11(3)(d). (We will refer to the requirement of this agreement as "the special exception condition.")

¶ 6. Wisconsin Builders filed this action seeking a declaration judgment that the 1999 and 2001 amendments expanding DOT's authority to review all land divisions was without statutory authority. Wisconsin Builders also sought a declaration that the setback restrictions and the special exception condition violated the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 1 of the

---

[5] The term originally used was "variance" but it was changed to special exception in the 2001 amendments.

[6] Structures and improvements lawfully placed in a setback area prior to February 1, 1999, or lawfully placed in a setback area prior to a land division were allowed to continue. Wis. Admin. Code § Trans 233.012(2)-(3).

Wisconsin Constitution because they constituted a taking without just compensation.

¶ 7. The circuit court concluded that WIS. STAT. § 236.03(1) authorized DOT to regulate land divisions abutting highways only if they are subdivisions as defined in WIS. STAT. § 236.02(12) and (8). The circuit court also concluded that WIS. STAT. § 86.07(2), relating to permits for excavations, culverts, or other alterations of a highway, did not confer on DOT the authority to regulate all land divisions abutting the highway. Finally, the court concluded that the 1999 and 2001 amendments relating to setback restrictions and the special exception condition violated the state and federal constitutional protections against public takings without just compensation. The court therefore declared the challenged provisions of WIS. ADMIN. CODE ch. TRANS 233 invalid.

## ANALYSIS

¶ 8. On appeal, DOT argues that the circuit court erred in concluding that it does not have the statutory authority to regulate all land divisions and that its ruling on the constitutionality of the setback restrictions and special exception condition was in error. Both parties agree that our review of these issues is de novo. The issue whether administrative rules exceed an agency's statutory authority presents a question of law, which we review de novo. *Wisconsin Citizens Concerned for Cranes & Doves v. DNR*, 2004 WI 40, ¶ 10, 270 Wis. 2d 318, 677 N.W.2d 612. The issue whether a regulation constitutes an unconstitutional taking is also question of law. *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 372, 548 N.W.2d 528 (1996).

## I. Statutory Authority

¶ 9. An administrative agency has only those powers expressly conferred or necessarily implied from the statutory provisions under which it operates. *Wisconsin Citizens Concerned for Cranes & Doves*, 270 Wis. 2d 318, ¶ 14. To determine whether a rule exceeds an agency's statutory authority, we examine the enabling statute to ascertain whether the statute grants express or implied authorization for the rule. *Id.* An agency's enabling statute is to be strictly construed, and we resolve any reasonable doubt pertaining to an agency's implied powers against the agency. *Id.* An administrative rule that exceeds an agency's statutory authority is invalid. *Id.*

¶ 10. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, statutory language is ambiguous— that is, capable of being understood by reasonably well-informed persons in two or more senses—then we may employ sources extrinsic to the statutory text. *Id.*,

¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50.

¶ 11. DOT contends there are a number of statutes that give it the authority to promulgate rules that apply to all land divisions abutting highways. According to DOT, it has broad authority to regulate matters relating to state highways under several sections in Wis. Stat. chs. 84, 85, and 86, and this authority is broad enough to include regulating all land divisions abutting highways. In addition, DOT contends, Wis. Stat. § 236.03(1) authorizes it to regulate all land divisions abutting highways, even though they are not subdivisions, and the circuit court erred in construing it to the contrary.

¶ 12. DOT also points out that it is authorized by Wis. Stat. § 85.16(1) to "make reasonable and uniform orders and rules deemed necessary to the discharge of the powers, duties and functions vested in the department." DOT describes this as "broad rulemaking power," and it is—so long as the rules are "deemed necessary" to discharge the "powers, duties and functions" that other statutes vest in DOT. Thus, the proper focus is on the statutes that vest substantive powers, duties, and functions in DOT.

A. Wisconsin Stat. Chapter 236

¶ 13. We begin with a discussion of Wis. Stat. ch. 236 because that relates specifically to land divisions. Wisconsin Stat. § 236.03(1) provides:

> Any division of land which results in a subdivision as defined in s. 236.02 (12) (a) shall be, and any other division may be, surveyed and a plat thereof approved and recorded as required by this chapter. No map or survey purporting to create divisions of land or intend-

ing to clarify metes and bounds descriptions may be recorded except as provided by this chapter.

¶ 14. "Plat" is defined in WIS. STAT. § 236.02(8) as "a map of a subdivision." WISCONSIN STAT. § 236.02(12) defines a "subdivision" as:

a division of a lot, parcel or tract of land by the owner thereof or the owner's agent for the purpose of sale or of building development, where:

(a) The act of division creates 5 or more parcels or building sites of 1 1/2 acres each or less in area; or

(b) Five or more parcels or building sites of 1 1/2 acres each or less in area are created by successive divisions within a period of 5 years.

¶ 15. WISCONSIN STAT. § 236.13 lists conditions with which preliminary and final plats must comply in order to be approved. These include "[t]he rules of the department of transportation relating to provision for the safety of entrance upon and departure from the abutting state trunk highways or connecting highways and for the preservation of the public interest and investment in such highways." Section 236.13(1)(e).

¶ 16. DOT argues that WIS. STAT. § 236.03(1) gives it the authority to regulate land divisions other than subdivisions if it chooses. DOT reads the language "any other land division may be . . . surveyed and a plat thereof approved and recorded as required by this chapter" to mean that DOT may choose to subject all land divisions to its rules. We do not agree. Section 236.03(1) does not even refer to DOT, and there is no implication from the language that the legislature intended to give DOT the authority to decide whether land divisions that are not subdivisions must comply

with DOT's regulations. WISCONSIN STAT. § 236.13(1)(e) does refer to DOT and does expressly require subdivisions to comply with DOT's rules relating to the safety of entrance and departure and the preservation of the public interest and investment in the referenced highways; but this provision does not either expressly or implicitly give DOT the authority to decide that other land divisions must also comply with its rules.

¶ 17. We have examined the entire chapter and no other provision reasonably suggests that the permissive language in WIS. STAT. § 236.03(1) for land divisions that are not subdivisions gives DOT greater authority than that specifically provided for in WIS. STAT. § 236.13(1)(e). In contrast, there is specific reference to the authority to regulate land divisions that are not subdivisions in WIS. STAT. § 236.45, which addresses the authority of local units of government to adopt ordinances. WISCONSIN STAT. § 236.45(2) provides in part:

> **(2)** DELEGATION OF POWER. (a) To accomplish the purposes listed in sub. (1), any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter. Such ordinances may include provisions regulating divisions of land into parcels larger than 1 1/2 acres or divisions of land into less than 5 parcels, and may prohibit the division of land in areas where such prohibition will carry out the purposes of this section. Such ordinances shall make applicable to such divisions all of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division.[7]

---

[7] WISCONSIN STAT. § 236.45(1) provides:

> **Local subdivision regulation. (1)** DECLARATION OF LEGISLATIVE INTENT. The purpose of this section is to promote the public

(Footnote added.) When this subsection is read together with § 236.03(1), the plain meaning is that local units of government with planning agencies—not DOT—may require land divisions that are not subdivisions to comply with the chapter's requirements for subdivisions—or may impose other requirements on those land divisions. *See Gordie Boucher Lincoln–Mercury Madison, Inc. v. Madison Plan Comm'n*, 178 Wis. 2d 74, 85, 503 N.W.2d 265 (Ct. App. 1993) (§ 236.03(1) requires that any subdivision shall be surveyed and a plat thereof approved and recorded as required by Wis. Stat. ch. 236, but under § 236.45(2), a city, village, town, or county that has established a planning agency may by ordinance require that "other divisions" must do so as well), *overruled on other grounds by Wood v. City of Madison*, 2003 WI 24, 260 Wis. 2d 71, 659 N.W.2d 31.

¶ 18. DOT contends that the legislative history supports its position,[8] but we conclude it does not. DOT (then the State Highway Commission) was first given

health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.

[8] We are uncertain whether DOT is arguing that we should consult legislative history to resolve an ambiguity in Wis. Stat.

the authority to review and approve land divisions in 1949.[9] At that time, WIS. STAT. § 236.03(1) (1949) provided:

> Any owner of land wishing to make a land division thereof into parcels, lots, or lots and blocks, for the purpose of sale or assessment, or wishing to dedicate streets, alleys, parks or other lands for public use, shall cause the same to be surveyed, and divided in accordance with this chapter.

A landowner was required to cause a "final plat" to be made upon the completion of a survey and land division, WIS. STAT. § 236.04(1) (1949); and a "final plat" was defined as a "map or chart of the land division." WIS. STAT. § 236.01(7) (1949). Thus, the requirement that all "plats" be submitted to and approved by certain government entities applied to all land divisions. WIS. STAT. § 236.06(1) (1949). When the legislature added the State Highway Commission to the list of approving entities and required that all plats of "lands abutting on a state trunk highway or connecting street" be approved by it, § 236.06(1)(j) (1949), that requirement applied to all land divisions.[10]

---

§ 236.03(1) or whether we should consult it to reinforce what DOT views as the plain meaning of the statute. However, the distinction does not matter, because we may consult legislative history for both purposes. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 51, 56 n.11, 271 Wis. 2d 633, 681 N.W.2d 110.

[9] 1949 Wis. Laws, ch. 138, § 2.

[10] WISCONSIN STAT. § 236.06(1)(j) (1949) did not refer to rules for the State Highway Commission's approval, but WIS. STAT. § 236.03(8) (1949), enacted at the same time, provided:

> (8) To promote the public safety and convenience, and in the interest of the general welfare, all land-divisions shall be so

¶ 19. In 1955, Wis. Stat. ch. 236 was repealed and recreated in substantially its present form. 1955 Wis. Laws, ch. 570. DOT argues that the enactment of the present Wis. Stat. § 236.03(1) shows that the legislature intended to continue DOT's authority to regulate land divisions that are not subdivisions, but to make it permissive rather than mandatory. However, we have already concluded that § 236.03(1) does not either expressly or implicitly give DOT the permissive authority to regulate land divisions that are not subdivisions. The legislative history reinforces our conclusion that the permissive authority was given to local units of government, not to DOT. At the same time that the legislature decided that the requirements of ch. 236 would apply only to subdivisions, not to all land divisions, it added the provisions in Wis. Stat. § 236.45(2) authorizing local units of governments with planning agencies to decide, by ordinance, that the requirements of the chapter—or other requirements—would apply to those land divisions. 1955 Wis. Laws, ch. 570, Wis. Stat. § 236.45(2).

¶ 20. We conclude that nothing in Wis. Stat. ch. 236 either expressly or implicitly gives DOT the authority to regulate land divisions that are not subdivisions as defined in Wis. Stat. § 236.02(12).

B. Wisconsin Stat. Chapter 84

¶ 21. DOT relies on the following provisions in Wis. Stat. ch. 84 as a basis for its assertion that it has

---

designated as to provide [1] for the safety of entrance upon and departure from the abutting highways or streets and [2] for the preservation of the public interest and public investment in such highways or streets, in so far as such provision shall be reasonable under the particular circumstances.

the authority to regulate all land divisions abutting highways under a broad grant of authority from the legislature. WISCONSIN STAT. § 84.01(15)[11] imposes on DOT the duty to plan, construct, improve and maintain the national system of interstate highways and federal aid highways and related projects under Title 23 of the United States Code;[12] receive all funds from any source to supplement the federal aid funds; and expend such funds in accordance with federal and state requirements. WISCONSIN STAT. § 84.015(2) gives DOT the authority to enter into contracts for construction and maintenance under Title 23, to submit plans and programs that may be required by the federal rules and to "do all other things necessary fully to carry out the cooperation contemplated and provided for by said

---

[11] WISCONSIN STAT. § 84.01(15) provides:

(15) FEDERAL AID SYSTEMS OF HIGHWAYS. The department shall plan, select, lay out, add to, decrease, revise, construct, reconstruct, improve and maintain, or arrange for maintenance by subdivisions of the state or by any other means, the national system of interstate highways, federal aid highway system, system of secondary and feeder roads, federal aid grade crossings projects, federal forest highway systems and projects and other highway and related projects, all within the meaning of Title 23, USC and all acts amendatory thereof and supplementary thereto, and the federal regulations issued under such code; and receive all funds provided by any source to match or supplement such federal aid funds, and expend such funds in accordance with the requirements of acts of congress or of this state making such funds available and cooperate with federal authorities and subdivisions of the state in carrying out this subsection. This subsection shall not limit the other powers of the department relative to federal aid for highways.

[12] Title 23 of the United States Code governs federal assistance for highways that are part of the interstate system or the national highway system. 23 U.S.C. §§ 101(a)(5) and 103(a) (2001).

code." Section 84.01(2) gives DOT charge of all matters pertaining to the expenditure of state and federal aid for highway improvements and requires it to do "all things necessary and expedient in the exercise of such supervision." WISCONSIN STAT. § 84.03(1)(a) obligates DOT to expend all federal highway aid and all state or other matching or supplemental funds in accordance with the federal requirements, and para. (b) gives DOT certain authority with respect to highway funds and local governments.

¶ 22. We see nothing in these provisions—either singly or in combination—that expressly or implicitly authorizes DOT to regulate land divisions abutting highways. In essence, all these provisions relate to DOT's duties and authority regarding the supervision and expenditure of federal and state highway funds and compliance with federal and state law related to those funds. The regulations that are at issue in WIS. ADMIN. CODE ch. TRANS 233 are not related to the supervision or expenditure of any such funds, and DOT presents no argument explaining why the regulations are required in order to obtain or maintain those funds.

C. WISCONSIN STAT. § 85.02(1)

¶ 23. WISCONSIN STAT. 85.02(1) provides:

> **Planning, promotion and protection. (1)** The department may direct, undertake and expend state and federal aid for planning, promotion and protection activities in the areas of highways, motor vehicles, traffic law enforcement, aeronautics, railroads, waterways, specialized transportation services, mass transit systems and for any other transportation mode. All state, regional and municipal agencies and commissions created under authority of law shall to the extent

491

practicable, when dealing with transportation, follow the recommendations made by the secretary.

¶ 24. DOT briefly mentions this section, specifically referring to the terms "planning" and "protection activities." We gather that DOT is tying these terms to its explanation of the need for applying the regulations to all land divisions. According to DOT, the drainage regulations protect highways from storm waters; the highway access, visibility, and setback restrictions enhance safety; and the setback restrictions and special exception condition facilitate DOT's future highway improvement projects. In DOT's view, because the regulations come within DOT's authority to "direct [and] undertake . . . planning . . . and protection activities in the areas of highways . . .," no more specific authorization is necessary for the regulation of land divisions. As we understand DOT's argument, even if WIS. STAT. ch. 236 gives it the authority to apply its regulations only to subdivisions, the broader authority in WIS. STAT. § 85.02 authorizes it to regulate all land divisions. DOT relies in this argument on the reasoning in *League of Wis. Municipalities v. DOC*, 2002 WI App 137, ¶¶ 20–22, 256 Wis. 2d 183, 647 N.W.2d 301.

¶ 25. In *League of Wis. Municipalities*, we considered a challenge to a rule of the department of commerce that allowed variances to rules regarding new private sewerage systems. The plaintiffs contended that this rule was beyond the authority of the department because a statute authorized the department to grant variances for existing systems, but said nothing about new systems. *Id.*, ¶¶ 19–21. We rejected the argument because, we concluded, there was no indication that the legislature intended that statute "to be the beginning and the end of the department's authority to grant

variances relating to private sewage systems." *Id.*, ¶ 21. Rather, we concluded, other statutes plainly expressed the legislature's intent to give the department broad authority to grant exceptions and variances from its rules. *Id.*, ¶¶ 21, 22.

¶ 26. We do not agree with DOT that the statutes in *League of Wis. Municipalities* are analogous. The statutes that we held gave the agency authority there were specific enough to reveal the legislature's intent with respect to the issue at hand—granting variances from the agency's own rules. WISCONSIN STAT. § 85.02 does not expressly give DOT the authority to regulate in any way land abutting highways, nor do the terms "planning" and "protection activities in the areas of highways" necessarily imply—or even reasonably imply —such authority. There is also nothing in any related sections of WIS. STAT. ch. 85 that even arguably suggests this meaning.

¶ 27. In addition, WIS. STAT. ch. 236 is a detailed and comprehensive statute relating to land divisions. The legislature has expressly given certain local units of government the authority to regulate land divisions that are not subdivisions. The matter of who can regulate land divisions and to what extent is a significant policy decision that affects a number of important and competing interests.[13] We are satisfied that the legislature did not intend to give DOT this authority in

---

[13] This is evident from the January 1955 report of the Conclusions and Recommendations of the Judiciary Committee on the Subdivision and Platting of Land, which undertook a study at the direction of the legislature and whose recommendations were largely adopted in the revisions enacted as 1955 Wis. Laws, ch. 570.

Wis. Stat. § 85.02 through use of the terms "planning . . . [and] protection activities in the areas of highways . . . ."

D. Wisconsin Stat. § 86.07(2)

¶ 28. Wisconsin Stat. § 86.07(2) provides:

(2) No person shall make any excavation or fill or install any culvert or make any other alteration in any highway or in any manner disturb any highway or bridge without a permit therefor from the highway authority maintaining the highway. Such permit shall contain the statement and be subject to the condition that the work shall be constructed subject to such rules and regulations as may be prescribed by said authority and be performed and completed to its satisfaction, and in the case of temporary alterations that the highway or bridge shall be restored to its former condition, and that the permittee shall be liable to the town or county or state, as the case may be, for all damages which occur during the progress of said work or as a result thereof. *Nothing herein shall abridge the right of the department or the county board or its highway committee to make such additional rules, regulations and conditions not inconsistent herewith as may be deemed necessary and proper for the preservation of highways, or for the safety of the public, and to make the granting of any such permit conditional thereon.* If any culvert is installed or any excavation or fill or any other alteration is made in violation of the provisions of this subsection, the highway may be restored to its former condition by the highway authority in charge of the maintenance thereof; and any person who violates this subsection shall be punished by a fine of not less than $5 nor more than $100, or by imprisonment not exceeding 6 months, or both.

(Emphasis added.)

¶ 29. DOT argues that the italicized sentence gives it the broad authority to regulate highway access "in the interests of public safety and convenience," citing *Narloch v. DOT*, 115 Wis. 2d 419, 432, 340 N.W.2d 542 (1983). In *Narloch*, the court considered the term "existing right of access" in WIS. STAT. § 32.09(6)(b). Under that paragraph, the "deprivation or restriction of existing right of access" had to be considered in determining compensation for a partial taking of property other than an easement. The court rejected DOT's argument that this term included only existing access points that had been improved and for which DOT had already granted permits under WIS. STAT. § 86.07(2). DOT's position was that, because it had the authority to restrict access points under § 86.07(2) and deny permits, it did not have to compensate for depriving a property owner of the right to apply for a permit. 115 Wis. 2d at 432. In that context, the court described § 86.07(2) as "not deny[ing] the right to access, but merely regulat[ing] access in the interests of public safety and convenience." *Id.* The court concluded that the "existing right of access" included "the right of an abutting property owner to ingress and egress, and the right [was] to be judged on the criteria for granting permits for access points under sec. 86.07(2) . . . ." *Id.*

¶ 30. There is nothing in *Narloch* that supports DOT's position that WIS. STAT. § 86.07(2) gives it the authority to regulate access to highways beyond the context of imposing conditions for permits for the alteration to or disturbance of the highway. DOT has promulgated regulations pursuant to § 86.07(2), and those are contained in WIS. ADMIN. CODE ch. TRANS 231. As explained in WIS. ADMIN. CODE § TRANS 231.01(1), those regulations

495

designat[e] standards within which the department is authorized to issue permits pursuant to s. 86.07(2), Stats., for placing, constructing or altering driveways for movement of traffic between state trunk highways and abutting property or otherwise making excavations or fills or installing culverts or making other alterations in a state trunk highway or in other manner disturbing any such highway . . . .

The prohibitions on access for land divisions in WIS. ADMIN. CODE § TRANS 233.05 go far beyond rules and conditions imposed by permits that allow access.

¶ 31. We agree with Wisconsin Builders that the language in WIS. STAT. § 86.07(2)—"[n]othing herein shall abridge the right of [DOT] . . ."—is not a broad grant of authority to promulgate regulations "for the preservation of highways, or for the safety of the public." Rather it is a statement that the legislature does not intend in this subsection to limit the authority DOT has independent of this section to impose conditions or promulgate rules regarding excavations, fill, culverts, or other alterations or disturbances to a highway—as long as the conditions and rules are consistent with this subsection.

E. Conclusion

¶ 32. We conclude WIS. STAT. ch. 236 does not authorize DOT to regulate land divisions that are not subdivisions within the meaning of WIS. STAT. § 236.02(12). We also conclude no other statute relied on by DOT grants this authority. DOT presents a number of policy arguments supporting its regulation of all land divisions. These arguments, however, must be addressed to the legislature. The existing statutes neither expressly nor by necessary implication give DOT this authority. Accordingly, the regulations in WIS.

ADMIN. CODE ch. TRANS 233 are invalid to the extent they apply to land divisions other than subdivisions.

## II. Setback Restrictions—Fifth Amendment Taking

¶ 33. Our conclusion that the regulations in WIS. ADMIN. CODE ch. TRANS 233 are beyond the statutory authority of DOT insofar as they apply to land divisions other than subdivisions does not affect their validity as applied to subdivisions. Thus, we need to decide the question of the constitutionality of the setback restrictions.[14]

¶ 34. A challenger to the constitutionality of regulations has the burden of showing unconstitutionality beyond a reasonable doubt, and the regulations carry a heavy presumption of constitutionality, just as do statutes. *Wisconsin Citizens Concerned for Cranes & Doves*, 270 Wis. 2d 318, ¶¶ 10 n.6, 13 n.8.

¶ 35. Because Wisconsin Builders has the burden of persuading us that the regulations effect an unconstitutional taking, we summarize its position first. It contends that the setback restrictions amount to a

---

[14] We note that, in addition to the constitutional challenge to the setback restrictions and the conditions for obtaining a special exception, Wisconsin Builders asserts that these regulations conflict with WIS. STAT. § 32.04. This section provides: "Procedure in condemnation. All acquisition of property in this state by condemnation, except as hereinafter provided, commenced after April 6, 1960 shall be accomplished in the following manner." We do not address this argument because it is it not sufficiently developed as an argument independent of Wisconsin Builders' constitutional argument.

taking of an easement development all along affected state highways and, therefore, under *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 837 (1987), there must be a nexus to a legitimate public purpose. DOT's purpose, Wisconsin Builders asserts, is to condemn land without paying for it and that is not a legitimate public purpose. DOT's position is that the setback restrictions do not facially effect a regulatory taking because they do not deprive landowners of substantially all valuable use of their property, and the special exception condition does not facially impose a development condition of the type declared unconstitutional in *Nollan.*[15]

¶ 36. The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property

---

[15] Wisconsin Builders argues that DOT waived the right to argue on appeal that the regulations did not facially effect a taking. Wisconsin Builders asserts that DOT did not make that argument in the circuit court, but argued only that the claims were unripe—a different argument, according to Wisconsin Builders. DOT's reply is that its ripeness argument in the circuit court was in substance the same as the argument that the regulations do not facially effect a taking; it is simply labeling the argument in a more correct way. We have the authority to consider arguments not raised in the circuit court. *Wirth v. Ehly,* 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980). We therefore need not decide whether the "facial" argument DOT makes on appeal is the same as the ripeness argument it made in the circuit court. They are, at the least, closely related issues of law. The record on appeal is sufficient to permit us to decide the issue as DOT now frames it and we choose to do so. Wisconsin Builders has had the opportunity to respond to DOT's "facial" argument, and its response is essentially the same as its argument that the setback restrictions effect an unconstitutional taking.

shall not "be taken for public use, without just compensation"; the clause does not prohibit the taking of private property, but instead places a condition on the exercise of that power. *Lingle v. Chevron U.S.A. Inc.*, 125 S. Ct. 2074, 2080 (2005) (citations omitted).[16] "In other words, it 'is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.' " *Id.* (citation omitted, emphasis omitted). While "the paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property . . . . government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and . . . such 'regulatory takings' may be compensable under the Fifth Amendment." *Id.* at 2081 (citations omitted).

¶ 37. In *Lingle*, the Court recently summarized the types of regulatory actions that may constitute a taking for Fifth Amendment purposes and the appropriate standards for each: (1) those that require an owner to suffer a permanent physical invasion of his or her property, however minor; (2) those that completely deprive an owner of "all economically beneficial us[e]" of his or her property (these first two categories generally will be deemed per se takings for Fifth Amendment

---

[16] Wisconsin Builders alleged an unconstitutional taking under both the federal and state constitutions, but it does not separately address state constitutional law. Both parties appear to assume that the state and federal standards are the same. We confine our analysis to the law interpreting the federal constitution and accept Wisconsin Builders' implicit concession that the analysis under the state constitution is the same.

purposes); (3) those that involve land use extractions under *Nollan*, 483 U.S. 825, and *Dolan v. City of Tigard*, 512 U.S. 374 (1994); and (4) in all other situations, those that meet the standards set forth in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). *Lingle*, 125 S. Ct. at 2081, 2085–87. Under *Penn Central*, the primary factors a court is to consider are

> '[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.' In addition, the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'—may be relevant in discerning whether a taking has occurred.

*Lingle*, 125 S. Ct. at 2081–82 (citing *Penn Central*, 438 U.S. at 124).

¶ 38. Also in *Lingle*, the Court declared invalid an alternative test for determining whether a regulation effected a taking that it had formulated in *Agins v. City of Tiburon*, 447 U.S. 255 (1980). *Lingle*, 125 S. Ct. at 2078. In *Agins*, the Court stated that government regulation of private property "effects a taking if [such regulation] does not substantially advance legitimate state interests . . . ." *Agins*, 447 U.S. at 260. In *Lingle*, the Court concluded that this standard is not a valid method of identifying regulatory takings for which the Fifth Amendment requires just compensation.[17] 125 S. Ct. at 2085.

---

[17] In explaining the origin of this standard, the Court observed that it was derived from due process jurisprudence.

¶ 39. In applying the above standards to this case, we begin by noting that Wisconsin Builders is, as DOT correctly contends, making a facial challenge to the setback restrictions. That is, there are no facts of record regarding the application of the restrictions to a particular property owner. On a facial challenge, the only issue properly before the court is whether the "mere enactment" of the regulation constitutes a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987).

¶ 40. In light of *Lingle*, the theory that a regulation effects a taking for Fifth Amendment purposes if it does not substantially advance a legitimate state interest is no longer valid. Thus, to the extent Wisconsin Builders relies on this theory—and it does cite to *Agins*—it does not have a viable argument that the enactment of the setback restrictions effect a taking. However, as the Court made clear in *Lingle*, *Nollan* and *Dolan* establish a distinct test for a regulatory taking that remains viable. We therefore consider whether, as Wisconsin Builders contends, the enactment of the setback restrictions constitute a taking under this standard.

¶ 41. As explained in *Lingle*, both *Nollan* and *Dolan* involved "Fifth Amendment takings challenges to adjudicative land-use exactions—specifically, government demands that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit." *Lingle*, 125 S. Ct. at 2086. In both cases, the Court stated that, had the government simply required the landowners to dedicate

*Lingle v. Chevron U.S.A. Inc.*, 125 S. Ct. 2074, 2083 (2005). The court invalidated this standard only for a Fifth Amendment taking analysis.

their land for public use, rather than conditioning the grant of the permits upon such a dedication, a taking would have occurred. *Nollan*, 483 U.S. at 830–31; *Dolan*, 512 U.S. at 384. The reason that would have been a taking is that "such public access would deprive [the landowners] of the right to exclude others, 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' " *Dolan*, 512 U.S. at 384 (citation omitted). The issue presented in both cases, "was whether the government could, without paying the compensation that would otherwise be required upon effecting such a taking, demand the easement as a condition for granting a development permit the government was entitled to deny." *Lingle*, 125 S. Ct. at 2086. The *Lingle* Court summarized the holdings of the two cases in this way:

> The Court in *Nollan* answered in the affirmative, provided that the exaction would substantially advance the same government interest that would furnish a valid ground for denial of the permit. 483 U.S. at 834–837 . . . . The Court further refined this requirement in *Dolan*, holding that the adjudicative exaction requiring dedication of private property must also be " 'rough[ly] proportiona[l]' . . . both in nature and extent to the impact of the proposed development." 512 U.S. at 391 . . . .

*Id.* (citations omitted).

¶ 42. As we understand Wisconsin Builders' argument, it analogizes the DOT setback restrictions to the easements in *Nollan* and *Dolan*.[18] However, the differences are significant. The setback restrictions are not a

---

[18] Although DOT asserts that two different analyses are required—one for the setback restrictions and one for the special exception condition, Wisconsin Builders does not make a

public easement: they do not deprive landowners of the right to exclude others. It is not, as the *Lingle* Court described the easements in *Nollan* and *Dolan*, a *"per se* physical taking [outside of the exaction context]." *Lingle*, 125 S. Ct. at 2086.

¶ 43. Wisconsin Builders finds support for its easement analogy in *Kamrowski v. State Highway Comm'n*, 31 Wis. 2d 256, 142 N.W.2d 793 (1966), but that case did not decide whether a governmental action constituted a Fifth Amendment taking. There the legislature authorized the state highway commission to pay to acquire "scenic easements" along particular highways through the power of eminent domain. *Id.* at 263. The scenic easements prohibited certain uses, permitted others, and did not allow the public the right to enter the restricted area. *Id.* at 260–61. The property owners contended that, even if they were compensated, the government action was unconstitutional because public enjoyment of scenic beauty was not a public use and there were insufficient standards limiting the commission's actions. *Id.* at 261. The court concluded that the public enjoyment of scenic beauty was a public purpose that supported the power to take property in return for just compensation and the legislature had given the commission sufficient standards. *Id.* at 265–66. The court did not decide that the scenic easement was a Fifth Amendment taking, because the commission was willing to offer just compensation. However, that willingness does not become legal authority for what constitutes a taking in this case, as Wisconsin Builders appears to suggest. In addition, the mere use of the term "scenic easement" there does not support an argument that those restrictions are the

separate argument for each. We address only the arguments that Wisconsin Builders makes.

503

same as the public access easements in *Nollan* and *Dolan*, which were deemed "*per se* physical takings." *Lingle*, 125 S. Ct. at 2087.

¶ 44. Wisconsin Builders, in essence, is arguing for a significant extension of *Nollan* and *Dolan*, but the Supreme Court has at least twice emphasized that it has not extended the standard applied there beyond the specific context of those cases. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 702 (1999) ("we have not extended the rough-proportionality test of *Dolan* beyond the special context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use"); and *Lingle*, 125 S. Ct. at 2086 (citing *Del Monte Dunes* approvingly on this point). We decline to extend the *Nollan/Dolan* standard to a context far removed from the facts of those cases.

¶ 45. We also observe that the rough proportionality standard of *Dolan* requires that, in an adjudicative context, the government make "an individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." 512 U.S. at 391. This standard does not, by its very terms, appear to apply to the facial challenge to a regulation, where there are no facts regarding any individual landowner. Wisconsin Builders does not present an argument that resolves this incompatibility.

¶ 46. We conclude that the *Nollan/Dolan* standard does not apply to Wisconsin Builders' facial challenge to the setback restrictions. We therefore do not take up DOT's argument that the special exception condition is permissible under that standard.

¶ 47. Wisconsin Builders does not argue that any of the three other theories available under *Lingle* for challenging a government regulation as a Fifth Amendment taking are applicable to its facial challenge to the

setback restrictions or the special exception condition. *See* paragraph 37. Accordingly, we conclude Wisconsin Builders has not established that the enactment of the setback restrictions effect a taking under either the Fifth Amendment to the United States Constitution or article I, section 1 of the Wisconsin Constitution. *See* footnote 16.

*By the Court.*—Order affirmed in part; reversed in part.